IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| P. J. THOMPSON, a Minor, by his next of kin, his Mother CARLIE WILLIS and Father TYLER THOMPSON, and CARLIE WILLIS, Individually,<br><br>Plaintiffs,<br>v.<br><br>United States of America<br>Hon. Jefferson B. Sessions<br>Attorney General of<br>The United States<br>US Department of Justice<br>950 Pennsylvania Ave, NW<br>Washington, DC 20530<br><br>Mr. Steven D. Weinhoeft<br>US Attorney for<br>Southern District of Illinois<br>United States Attorney's Office<br>9 Executive Dr.<br>Fairview Heights, IL 62208<br><br>and<br><br>SOUTHERN ILLINOIS HOSPITAL SERVICES, d/b/a MEMORIAL HOSPITAL OF CARBONDALE,<br>    c/o Registered Agent<br>    William F. Sherwood, Esq.<br>    1239 E. Main St.<br>    Carbondale, Illinois 62901<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 18-CV- 1520 |

# COMPLAINT

Plaintiffs, P. J. THOMPSON, A Minor, by his next of kin, his Mother, CARLIE WILLIS and Father, TYLER THOMPSON, and CARLIE WILLIS, Individually, complaining of Defendant the United States of America under the Federal Torts Claim Act as well as the appropriate Illinois statute and Southern Illinois Hospital Services d/b/a Memorial Hospital of Carbondale, (hereinafter SIHS) and states as follows:

# PROCEDURAL

1. This medical negligence action arises under the Federal Tort Claims Act (FTCA) ch 646, 62 Stat. 929 (1948). Venue is proper in this jurisdiction because the acts complained of occurred in this jurisdiction.

2. A U.S. Department of Justice Standard Form 95 was timely filed with the U.S. Department of Health & Human Services on or about January 5, 2018.

3. By correspondence dated May 3, 2018, the United States Department of Health and Human Services tendered a final determination of its administrative claim as required by 28 U.S.C. Sections 2401(b), 2675(a) by denying the same.

# STATEMENT OF JURISDICTION

4. This Court has subject matter Jurisdiction over Dr. Paul J. Cruz, M.D. and Christopher Greater Area Rural Health Planning Corporation, pursuant to Federal Question Jurisdiction, 28 USC-1331 28 USC-2671 *et. seq.*, commonly known as the Federal Torts Claims Act.

5. This Court has supplemental jurisdiction SIHS d/b/a Memorial Hospital of Carbondale, pursuant to 28 USC-1367(a) as the claims against SIHS d/b/a Memorial Hospital of Carbondale, form part of the same constitutional case or controversy as the claims against the United States' defendants Paul J. Cruz, M.D. and Christopher Greater Area Rural Health Planning Corporation, and over which this court has jurisdiction.

## COUNT I
### *P. J. THOMPSON, A Minor, by his next of kin, his Mother, CARLIE WILLIS and Father, TYLER THOMPSON v. United States of America*

1. That at all times mentioned herein the Plaintiff, Carlie Willis, Tyler Thompson and P.J. Thompson, were residents of the State of Illinois.

2. That at all times mentioned herein, Paul J. Cruz, M.D. was a physician, duly licensed to practice under the law of the State of Illinois, and was engaged in the practice of his profession providing services to patients.

3. That Paul J. Cruz, M.D. was employed as a physician by the Christopher Greater Rural Health Planning Corporation (hereinafter "CGRHPC") and at all times was acting within the scope of his employment.

4. That at all times mentioned herein, CGRHPC, was a company located in Herrin, Illinois, among possibly other locations, out of which Paul J. Cruz, M.D. provided medical services to the public, including P.J. Thompson, a minor and Carlie Willis.

5. That at all times herein, there existed a physician-patient relationship between Paul J. Cruz, M.D., and Carlie Willis and P.J. Thompson and Paul J. Cruz, M.D.

6. That on January 14, 2016 Carlie Willis' presented for induction of labor at 39 6/7ths weeks of gestation.

7. Carlie Willis' cervix was described as having a Bishop of 7 on January 6, 2016 (cervix 1-2 cm dilated, 70% effaced, -2 station, cervix with a soft consistency and mild position).

8. When Carlie Willis was admitted on January 14, 2016 for cervidil cervical ripening followed by Pitocin induction of labor, her cervix was quite unfavorable (less than 1 cm dilated, hard and posterior).

9. Pitocin infusion began at 21:59 on January 14, 2016 and increased at irregular

intervals.

10. By 10:59 on January 15, 2016, Carlie Willis' cervix was 2 cm dilated, 70% effaced and the presenting part was at -1 station and her (Carlie Willis') membranes were ruptured with clear amniotic fluid noted.

11. By 15:00 on January 15, 2016, Carlie Willis' Pitocin was infusing at 20 milliunits per minute rate and her fetal heart rate baseline was at 105 beats per minute at 15:15.

12. At 18:16 on January 15, 2016, an amnioinfusion was done for fetal heart rate abnormality, and the Pitocin was decreased from a rate of 23 to a rate of 22.

13. At 18:50 on January 15, 2016 Pitocin was further decreased to 20 and at 18:59 discontinued because of variable fetal heart rate decelerations at 20:15.

14. Pitocin was restarted at 21:06 on January 15, 2016 and increased to a rate of 3 milliunits per minute at 22:37 that same night.

15. At 22:55 on January 15, 2016, it was noted that Dr. Cruz indicated he was coming to do a cesarean section.

16. At 23:15 on January 15, 2016, there were late decelerations of the fetal heart rate and at 23:30 on January 15, 2016 a prolonged (late appearing) deceleration.

17. At 23:33 on January 15, 2016, Carlie Willis was noted to be 6-7 cm dilated, 90% effaced, and at 23:37 that same night, the Pitocin was increased to a rate of 5 milliunits per minute.

18. At 23:42 on January 15, 2016, Dr. Cruz reviewed the fetal heart strip.

19. At 23:57 on January 15, 2016, Carlie Willis was dilated to 9 cm, 90% effaced, the presenting part was at 0 station per Dr. Cruz's examination.

20. Pitocin was increased to 7 milliunits per minute at 00:08 on January 16, 2016.

21. At 00:34 on January 16, 2016, Carlie Willis had only an anterior lip of her cervix remaining, was completely effaced and at +2 station.

22. At 00:49 on January 16, 2016, Carlie Willis was described as completely dilated, completely effaced and at a +2 station.

23. At 01:00 on January 16, 2016 late decelerations were evident on the fetal monitor strip.

24. At 01:02 on January 16, 2016, O2 was administered to Carlie Willis.

25. At 02:15 on January 16, 2016 Carlie Willis was given an IV bolus of fluids.

26. At 02:32 Pitocin was decreased, but continued at 8 milliunits.

27. At 02:28 on January 16, 2016 the fetal heart rate was flat and increased to 200 at 02:38.

28. At 02:45 on January 16, 2016 Carlie Willis was prepped for delivery and delivery was accomplished with vacuum assist at 2:46.

29. Following delivery Apgar scores were assigned 1/3/5/5 at 1/5/10/15 minutes of life and cord pH was recorded as 7.21 with a base deficit of 13.4 (artery) and 12.9 (vein) indicating severe lactic acidosis.

30. Baby P. J. Thompson weighed 7 pounds and 9 ounces and at delivery terminal meconium was demonstrated.

31. During the first few hours of life P.J. Thompson continued to demonstrate increasingly acidotic pH values of cord blood with significant increases in base deficit consistent with severe lactic acidosis.

32. By 22:37 on January 16, 2016, the level of serum lactate in P.J. Thompson's blood was at a critical level of 17, indicative of severe metabolic acidosis.

33. P.J. Thompson was placed on antibiotics for presumed sepsis though cultures later were negative.

34. P.J. Thompson demonstrated convulsions, a cephalohematoma from birth injury as well as respiratory distress and accordingly head cooling was done and life support in the form of pressors, oxygen and assisted ventilation as well as IV fluids.

35. Subsequent lumbar puncture demonstrated no evidence of meningitis, but a MRI performed on January 20, 2016 indicated profound areas of restricted diffusion, most severe in the deep gray nuclei and cortex consistent with global cerebral insult and the injury was estimated to have been within the last 7 days.

36. Subsequent testing, assessments and clinical evaluations provided evidence of central nervous system damage from hypoxic ischemic encephalopathy.

37. That at the time and places mentioned herein, Defendant, United States of America, was guilty of one, more than one or all of the following acts or omissions during the period of January 14, 2016 and continuing:

    a. Inappropriately administering and monitoring of Pitocin in the face of non-reassuring fetal heart rate strip and specifically variable and late decelerations;

    b. Continuing Pitocin in the face of fetal heart rate decelerations as Pitocin should be discontinued or decreased and if recurrent episodes occur following reinstitution of Pitocin the infusion should have been ceased;

    c. Inappropriately increasing Pitocin infusion in the fate of fetal heart rate decelerations;

    d. Failing to recognize and/or appropriately intervene in the face of nonreassuring fetal heart rate pattern, specifically recurrent variable, late and prolonged deceleration;

    e. Failing to deliver P.J. Thompson by cesarean section no later than 01:15 on January 16, 2016; and

    f. Failing to institute the chain of command in the face of violations of safe practices

of infusion of Pitocin in the face of fetal heart rate decelerations.

38. That P.J. Thompson's severe lactic acidosis and hypoxic ischemic encephalopathy and subsequent disability related to the diagnoses set forth herein and experienced by P.J. Thompson are the direct result of the above violations and the acceptable standards of obstetrical care.

39. That as a direct and proximate result of one, more than one or all of the foregoing acts or omissions of the Defendant, United States of America, the Plaintiff, P.J. Thompson, was then and there injured including, but not limited to suffering great pain, physical and mental disabilities, loss of normal life, past medical bills, future medical bills, economic losses, including future wage loss and future earning capacity, and he will have future needs for medical care, life care and is and will continue to be unable to attend to his ordinary affairs and duties.

WHEREFORE, P. J. THOMPSON, A Minor, by his next of kin, his Mother, CARLIE WILLIS and Father, TYLER THOMPSON, prays for a judgment in his favor and against Defendant, United States of America, in an amount which substantially exceeds the minimum jurisdictional limit, together with costs of suit and such other relief as this Court deems just and proper.

## COUNT II
*P. J. THOMPSON, A Minor, by his next of kin, his Mother, CARLIE WILLIS and Father, TYLER THOMPSON v. Southern Illinois Hospital Services, d/b/a Memorial Hospital of Carbondale*

1-36. Plaintiff realleges and repleads paragraphs 1-36 of Count I as if pled in their entirety in this Count II of Plaintiff's Complaint.

37. That all times mentioned herein, it was the duty on the part of Memorial Hospital of Carbondale to provide, review and supervise the care, delivery and treatment of its

patients by competent and properly skilled personnel, including, but not limited to servants, nurses, employees, staff, doctors with privileges, independent contractors, physicians and agents to administer proper and adequate medical care to P.J. Thompson, who came to them for delivery, care and treatment.

38. As set forth in detail herein, Memorial Hospital of Carbondale deviated from acceptable standards of care by injuring P.J. Thompson permanently and for his lifetime.

39. That Defendant, Memorial Hospital of Carbondale, by and through its employees, agents and/or servants were guilty of one, more than one or all of the following negligent acts or omissions beginning on January 15, 2016:

    a. Inappropriately administering and monitoring of Pitocin in the face of non-reassuring fetal heart rate strip and specifically variable and late decelerations;

    b. Continuing Pitocin in the face of fetal heart rate decelerations as Pitocin should be discontinued or decreased and if recurrent episodes occur following reinstitution of Pitocin the infusion should have been ceased;

    c. Inappropriately increasing Pitocin infusion in the fate of fetal heart rate decelerations;

    d. Failing to recognize and/or appropriately intervene in the face of nonreassuring fetal heart rate pattern, specifically recurrent variable, late and prolonged deceleration;

    e. Failing to deliver P.J. Thompson by cesarean section no later than 01:15 on January 16, 2016; and

    f. Failing to institute the chain of command in the face of violations of safe practices of infusion of Pitocin in the face of fetal heart rate decelerations.

40. That as a direct and proximate result of one, more than one or all of the foregoing acts or omissions of Memorial Hospital of Carbondale, P.J. Thompson was then and there injured including, but not limited to suffering great pain, physical and mental disabilities, loss of normal life, past medical bills, economic losses, including future wage loss and future

earning capacity, and he will have future needs for medical care, life care and is and will continue to be unable to attend to his ordinary affairs and duties.

WHEREFORE, P. J. THOMPSON, A Minor, by his next of kin, his Mother, CARLIE WILLIS and Father, TYLER THOMPSON, prays for a judgment in his favor and against Defendant, Memorial Hospital of Carbondale, in an amount which substantially exceeds the minimum jurisdictional limit, together with costs of suit and such other relief as this Court deems just and proper.

## COUNT III
### *CARLIE WILLIS, Individually, v. United States of America*

1. That Plaintiff Carlie Willis, at all times relevant herein, was and is a resident of Illinois.

2. That at all times mentioned herein, Paul J. Cruz, M.D. was a physician, duly licensed to practice under the law of the State of Illinois, and was engaged in the practice of his profession providing services to patients.

3. That Paul J. Cruz, M.D. was employed as a physician by the Christopher Greater Rural Health Planning Corporation (hereinafter "CGRHPC") and at all times was acting within the scope of his employment.

4. That at all times mentioned herein, CGRHPC, was a company located in Herrin, Illinois, among possibly other locations, out of which Paul J. Cruz, M.D. provided medical services to the public, including Carlie Willis.

5. That at all times herein, there existed a physician-patient relationship between Paul J. Cruz, M.D., and Carlie Willis and Paul J. Cruz.

6. That on January 14, 2016 Carlie Willis presented for induction of labor at 39 6/7ths weeks of gestation.

7. That on January 16, 2016 Carlie Willis underwent vacuum assisted vaginal delivery at Memorial Hospital of Carbondale.

8. That during delivery it became necessary that Carlie Willis undergo an episiotomy which was subsequently repaired by Paul J. Cruz, M.D.

9. That following discharge from Memorial Hospital of Carbondale, Carlie Willis presented to the emergency room department at Barnes Jewish Hospital with a complaint of a foul vaginal discharge.

10. That during her admission to Barnes Jewish Hospital, the emergency department personnel located a retained sponge measuring 4 x 4 in Carlie Willis' vagina.

11. The episiotomy repair was intact, but as a result of the infection associated with the retained sponge, Carlie Willis was placed on antibiotic therapy (Augmentin).

12. On or about January 22, 2016, Carlie Willis was seen in the clinic for follow-up.

13. Subsequently, Carlie Willis visited the emergency room department on January 27, 2016, for recurrent vaginal infection.

14. The sponge, per the emergency department medical record was just inside the vaginal introitus and was easily removed.

15. Defendant, United States of America, was guilty of one, more than one or all of the following negligent acts or omissions on January 16, 2016:

    a). Carelessly and negligently failed to ensure that the sponge count following delivery matched the count prior to the start of the procedure;

    b). Carelessly and negligently failed to reinforce said count by not carefully examining (sweeping) Carlie Willis' vagina prior to accepting count as correct; and

    c). Carelessly and negligently failed to properly treat and care for Carlie Willis following delivery.

16. That as a direct and proximate result of one, more than one or all of the foregoing acts or omissions of the Defendant, United States of America, Plaintiff, Carlie Willis, was then and there injured, including but not limited to suffering great pain, infection, medical bills, emotional distress leading to counseling, and additional medical care and procedures. Said problems are permanent affect her enjoyment of normal life and will in the future.

WHEREFORE, Plaintiff Carlie Willis, prays for judgment in her favor and against Defendant, United States of America, in an amount which substantially exceeds the minimum jurisdictional limit, together with costs of suit and such other relief as this Court deems just and proper.

## COUNT IV
### *CARLIE WILLIS, Individually, v. Southern Illinois Hospital Services, d/b/a Memorial Hospital of Carbondale*

1.-15. Plaintiff realleges and repleads paragraphs 1-15 of Count III as if pled in their entirety in this Count IV of Plaintiff's Complaint

16. That all times mentioned herein, it was the duty on the part of Memorial Hospital of Carbondale to provide, review and supervise the care, delivery and treatment of its patients by competent and properly skilled personnel, including, but not limited to servants, nurses, RNFAs, employees, staff, doctors with privileges, independent contractors, physicians and agents to administer proper and adequate medical care to Carlie Willis.

17. That at all times mentioned herein Memorial Hospital of Carbondale represented that it provided competent and skilled personnel, employees, nurses, staff, agents, independent contractors and doctors who had privileges in the treatment and care of Plaintiff, Carlie Willis, and competent supervision of said personnel, staff, employees and agents.

18. That in presenting at Memorial Hospital of Carbondale, the Plaintiff, Carlie

Willis, relied upon the good name of Memorial Hospital of Carbondale in the reasonable belief that the physicians, nurses and other personnel practicing therein were employees, staff, doctors with privileges, agents or independent contractors of Memorial Hospital of Carbondale.

19. That during 2016 and at all times relevant herein, Memorial Hospital of Carbondale was engaged in the business of offering medical care and services in Jackson County, Illinois and engaged on its staff physicians, nurses, employees and other personnel and independent contractors.

20. That at said time and place stated herein, Memorial Hospital of Carbondale was guilty of one, more than one or all of the following negligent acts or omissions on January 16, 2016:

a). Carelessly and negligently failed to ensure that the sponge count following delivery matched the count prior to the start of the procedure;

b). Carelessly and negligently failed to reinforce said count by not carefully examining (sweeping) Carlie Willis' vagina prior to accepting its count as correct; and

c). Carelessly and negligently failed to properly treat and care for Carlie Willis.

21. That as a direct and proximate result of one, more than one or all of the foregoing acts or omissions of the Defendant, Memorial Hospital of Carbondale, Plaintiff, Carlie Willis, was then and there injured, including but not limited to suffering great pain, infection, medical bills, emotional distress leading to counseling, and additional medical care and procedures. Said problems are permanent affect her enjoyment of normal life and will in the future.

WHEREFORE, Plaintiff Carlie Willis, prays for judgment in her favor and against Defendant, Memorial Hospital of Carbondale, in an amount which substantially exceeds the minimum jurisdictional limit, together with costs of suit and such other relief as this Court deems

just and proper.

## COUNT V
## (FAMILY EXPENSE)

*Carlie Willis, as Mother and Next of Kin to P.J. Thompson, a Minor v. United States of America*

1-38. The Plaintiff repeats and realleges Paragraphs 1-38 of Count I of this complaint as Paragraphs 1-38 of this Count V with full force and effect as if pleaded here in full.

39. That Carlie Willis is the natural mother to P.J. Thompson, a minor.

40. As a direct and proximate result of one or more of the aforementioned acts or omissions of the Defendant, the Plaintiff sustained great losses in the form of past medical expenses, care giving expenses and future medical bills.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff, Carrie Willis, against Defendant, United States of America, in an amount to fully and fairly compensate the Plaintiff for all past and future losses compensable under the terms of the family expense statute under the Right of Married Persons Act, 750 ILCS 65/15, and Illinois common law, which substantially exceed the minimum jurisdictional amount.

## COUNT VI
## (FAMILY EXPENSE)

*Carlie Willis, as Mother and Next of Kin to P.J. Thompson, a Minor v. Southern Illinois Hospital Services, d/b/a Memorial Hospital of Carbondale*

1.-40. The Plaintiff, Carlie Willis, repeats and realleges Paragraphs 1-40 of Count II of this complaint as Paragraphs 1-40 of this Count VI with full force and effect as if pleaded herein full.

41. That Carlie Willis is the natural mother to P.J. Thompson, a minor.

42. As a direct and proximate result of one or more of the aforementioned acts or omissions of the Defendant, the Plaintiff sustained great losses in the form of past medical expenses, care giving expenses and future medical bills.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff, Carrie Willis, against Defendant, Southern Illinois Hospital Services, d/b/a Memorial Hospital of Carbondale in an amount to fully and fairly compensate the Plaintiff for all past and future losses compensable under the terms of the family expense statute under the Right of Married Persons Act, 750 ILCS 65/15, and Illinois common law, which substantially exceed the minimum jurisdictional amount.

## COUNT VII
## (FAMILY EXPENSE)

*Tyler Thompson, as Father and Next of Kin to P.J. Thompson, a Minor v. United States of America*

1-38.   The Plaintiff repeats and realleges Paragraphs 1-38 of Count I of this complaint as Paragraphs 1-38 of this Count VII with full force and effect as if pleaded herein full.

39.   That Tyler Thompson is the natural father to P.J. Thompson.

40.   As a direct and proximate result of one or more of the aforementioned acts or omissions of the Defendant, United States of America, the Plaintiff sustained great losses in the form of past medical expenses, care giving expenses and future medical bills.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff, Tyler Thompson, against Defendant, in an amount to fully and fairly compensate the Plaintiff for all past and future losses compensable under the terms of the family expense statute under the Right of Married Persons Act, 750 ILCS 65/15, and Illinois common law, which substantially exceed the minimum jurisdictional amount.

## COUNT VIII
## (FAMILY EXPENSE)

*Tyler Thompson, as Father and Next of Kin to P.J. Thompson, a Minor v. SIHS, d/b/a Memorial Hospital of Carbondale*

1.-40.   The Plaintiff, Tyler Thompson repeats and realleges Paragraphs 1-40 of Count II of this complaint as Paragraphs 1-40 of this Count VIII with full force and effect as if pleaded

herein full.

41. That Tyler Thompson is the natural father to P.J. Thompson, a minor.

42. As a direct and proximate result of one or more of the aforementioned acts or omissions of the Defendant, SIHS d/b/a Memorial Hospital of Carbondale, the Plaintiff, Tyler Thompson, sustained great losses in the form of past medical expenses, care giving expenses and future medical bills.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff, Tyler Thompson, against Defendant, SIHS, d/b/a Memorial Hospital of Carbondale in an amount to fully and fairly compensate the Plaintiff for all past and future losses compensable under the terms of the family expense statute under the Right of Married Persons Act, 750 ILCS 65/15, and Illinois common law, which substantially exceed the minimum jurisdictional amount.

/s Joshua A. Humbrecht
Joshua A. Humbrecht
Hassakis & Hassakis, P.C.
206 S. 9th St., Suite 201
Mt. Vernon, Illinois 62864
618-244-5335 (phone)
618-244-5330 (fax)
jhumb@hassakislaw.com
ARDC No.: 6300072
Co-Counsel for Plaintiffs


Bill T. Walker
Attorney and Counselor at Law
3388-B Maryville Road
PO Box 1800
Granite City, Illinois 62040
618 797-1930 (phone)
618 797-1935 (fax)
billtw@sbcglobal.net
Attorney No.: #02921782
Lead Counsel for Plaintiffs

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
P.J. Thompson, a Minor, by his next kin, his Mother Carlie Willis and Father Tyler Thompson and Carlie Willis, Individually

## DEFENDANTS
United States of America and Southern Illinois Hospital Services, d/b/a Memorial Hospital of Carbondale

**(b)** County of Residence of First Listed Plaintiff: **Jackson**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant:
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Joshua A. Humbrecht, Hassakis & Hassakis, P.C., 206 S. 9th St., Suite 201, Mt. Vernon, Illinois, 62864; 618-244-5335

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only) and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☒ 362 Personal Injury - Medical Malpractice | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
**28 U.S.C. 2671**
Brief description of cause:
Medical Malpractice - Birth Injury to a Minor and Injury to Mother

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE                                           DOCKET NUMBER

DATE: 08/20/2018
SIGNATURE OF ATTORNEY OF RECORD: /s Joshua A. Humbrecht

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE