IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| P.J. THOMPSON, a Minor, by his next of kin, his mother CARLIE WILLIS and father TYLER THOMPSON, and CARLIE WILLIS, Individually,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA and SOUTHERN ILLINOIS HOSPITAL SERVICES d/b/a MEMORIAL HOSPITAL OF CARBONDALE,<br><br>Defendants. | Case No. 18-CV-1520-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a motion to compel filed by Plaintiffs P.J. Thompson, Carlie Willis, and Tyler Thompson ("Plaintiffs") directed to Defendant Southern Illinois Hospital Services d/b/a Memorial Hospital ("SIH") (Doc. 64). For the reasons set forth below, the Court denies the motion.

### FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs filed a complaint on November 22, 2019, alleging injuries due to negligence surrounding the delivery of P.J. Thompson. In the course of discovery related to this complaint, SIH responded to a request for documents by Plaintiffs with objections (Doc. 64–2). SIH produced a privilege log claiming privilege over three patient safety organization ("PSO") Encounter Entry Reports, dated January 18, 2016, January 18, 2016, and February 17, 2016 (Doc. 64–3). SIH also claimed privilege over three Confidential

Risk Management Worksheets dated March 1, 2016, March 1, 2016, and March 10, 2016 (*Id.*). Plaintiffs subsequently filed the instant motion to compel on May 20, 2020, and now ask this Court to order SIH to produce the referenced documents (Doc. 64).

Plaintiffs argue that SIH is unable to meet the burden of showing that any privilege protects the documents from disclosure. Regarding the Confidential Risk Management Worksheets, Plaintiffs argue that the work product doctrine does not apply because the documents were not prepared in anticipation of litigation, but rather were produced pursuant to policies and procedures from the ordinary business conduct of SIH (Doc 64 at 7–8). According to Plaintiffs, the attorney-client privilege does not apply because the documents contain factual information that was not provided to an attorney or was not generated by top management with the ability to make final decisions (Doc. 64 at 10). Plaintiffs also assert that insurer-insured privilege does not apply because the documents constitute intra-employee communications and that it would be an absurd result to allow a claim of privilege over SIH's internal communications merely for being a self-insured entity (Doc. 64 at 11). Finally, Plaintiffs argue the Patient Safety and Quality Improvement Act ("PSQIA") protection does not apply because the Confidential Risk Management Worksheets were not generated exclusively for reporting information to a PSO (Doc. 64 at 13–14). Regarding the PSO Encounter Entry Reports, Plaintiffs argue that PSQIA protection does not apply because the documents contain information from other sources that were not generated exclusively for reporting to a PSO (Doc. 14–15). Moreover, Plaintiffs argue that, to the extent SIH claims protection of these documents under the PSQIA, no other protection can apply (Doc. 64 at 15–16).

Defendant SIH filed a response to the motion on June 8, 2020 (Doc. 68). SIH argues that the Confidential Risk Management Worksheets were protected under the work product doctrine because the documents were created in anticipation of litigation as a result of the Patient Relations Manager's decision to assign a severity level E to filed Remote Data Entry ("RDE") reports, triggering an investigation per SIH's policies in place (Doc. 68 at 7–10; Doc. 68-1). SIH also argues the insurer-insured privilege applies as an extension of Illinois' attorney-client privilege and protects the documents from disclosure because they meet the elements for claiming insurer-insured privilege protections, despite being a self-insured entity (Doc. 68 at 12–15). Finally, SIH argues that the PSO Encounter Entry Reports were protected as Patient Safety Work Product under the PSQIA because they were generated exclusively for reporting to a PSO (Doc. 68 at 17–18).

## LEGAL STANDARD

The work-product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3), which states that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative. . . ." The work product doctrine is governed by federal law—even where the basis of federal jurisdiction is diversity. *See e.g., Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 276 (N.D. Ill. 1997) (Alesia, J.). Claims of privilege are considered substantive law and use the law of the state that supplies the rule of decision. *See In re Yasmin and Yaz*, No. 9-1200, 2011 WL 1375011 (S.D. Ill. Apr. 12, 2011). Under the Federal Tort Claims Act, courts are directed to examine substantive legal issues pursuant

to the laws of the place where the act or omission occurred. 28 U.S.C. § 1346(b) (2018). Thus, the law of the State of Illinois applies to evidentiary privileges such as attorney-client, insurer-insured, and PSQIA privilege.

## I.    Work Product

Under federal law, documents prepared in anticipation of litigation are protected under the work product doctrine. FED. R. CIV. P. 26(b)(3)(A). Materials prepared by agents for an attorney are protected as if they were prepared specifically by an attorney. *United States v. Nobles*, 422 U.S. 225, 238 (1975). To determine whether work product protection applies, the materials sought to be protected must in fact have been prepared in anticipation of litigation. *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983). The burden of proof is on the party claiming work product protection to show the documents are protected. *Id.* If the documents are protected, the requesting party must establish a "substantial need" for the discovery, as well as an inability to obtain equivalent materials by other means without "undue hardship," to otherwise obtain the sought after materials. FED. R. CIV. P. 26(b)(3)(A).

## II.   Insurer-Insured Privilege

To establish insurer-insured privilege, a party must prove: "(1) the identity of the insured; (2) the identity of the insurance carrier; (3) the duty to defend; and (4) that a communication was made between the insured and an agent of the insurer." *Chicago Trust Co. v. Cook Cnty. Hosp.*, 698 N.E.2d 641, 649 (Ill. App. Ct. 1998). The insurer-insured privilege can be applied to self-insured parties so long as the materials otherwise qualify under the privilege. *See Caldwell v. Advocate Condell Med. Ctr.*, 87 N.E.3d 1020, 1036-37 (Ill.

App. Ct. 2017) (upholding application of the insurer-insured privilege to statements made by a nurse manager employed by a self-insured medical center); *Chicago Trust.*, 698 N.E.2d at 651 (analyzing a claim of insurer-insured privilege over communications between a hospital (insurer) and certain employees (insureds)). The burden of establishing the privilege is on the party claiming the attorney-client privilege. *Caldwell*, 87 N.E.3d at 1036.

### III. Patient Safety Work Product

The Patient Safety and Quality Improvement Act of 2005, 42 U.S.C. § 299b-21 *et seq.* (2018), sought to encourage reporting of patient safety and healthcare quality information to patient safety organizations ("PSO") by providing privilege over that information, known as "patient safety work product." *Daley v. Teruel*, 107 N.E.3d 1028, 1032 (Ill. App. Ct. 2018). Any records "assembled or developed by a provider for reporting to a [PSO] and are reported" to a PSO, or "are developed by a [PSO] for the conduct of patient safety activities" and which could result in improved safety, care, and outcomes, are protected as patient safety work product. *Id.* at 1037. Those records that are not collected, maintained, or developed separately, or that do not exist separately from, a patient safety evaluation system are not protected under the privilege. *Id.* at 1038.

## ANALYSIS

### I. Confidential Risk Management Worksheets

Here, SIH has met its burden of showing the Confidential Risk Management Worksheets were prepared in anticipation of litigation. An articulable claim existed at the time the documents were created because each of the documents were prepared in

response to the Patient Relations Manager at SIH being informed about specific conduct that occurred between SIH and Plaintiffs surrounding the delivery of P.J. Thompson and subsequent events. Moreover, these documents were not created in the course of routine hospital business because they would not have been created but-for the Patient Relations Manager's severity classification. *See RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 219 (N.D. Ill. 2013) (analyzing whether the documents "would have been prepared if litigation was not anticipated); *Int'l Ins. Co. v. Certain Underwriters at Lloyd's London*, No. 88 C 9838, 1990 WL 205461, at *6 (N.D. Ill. Nov. 27, 1990) (asking whether documents claimed to be protected "would have been created whether litigation had been anticipated or not").

According to SIH's policies, assignment of the severity level E to a reported event triggers an investigation "for the purpose of obtaining legal advice and/or assessing the likelihood of litigation." (Doc. 68-1 at 2-3, 6-7). Moreover, the Confidential Risk Management Worksheets were not created by the nurses or other staff directly involved in the conduct that was reported, but rather information from RDE reports filed by those persons was used to generate the documents as part of an investigation directed by SIH General Counsel (Doc. 68 at 3; 68-2 at 6-9). There is no evidence that these documents were prepared in regular intervals, for example on a monthly or weekly basis; and indeed, the preparation of the Confidential Risk Management Worksheets stands in contrast to the RDE reports, which are prepared routinely after patient and visitor incidents and events (Doc. 68 at 3). Accordingly, SIH has met its burden of showing work product protection applies to the Confidential Risk Management Worksheets, and

Plaintiffs have made no showing of a substantial need to obtain the discovery.

Even without work product protection, the Confidential Risk Management Worksheets are independently protected from disclosure under the insurer-insured privilege. Plaintiffs cite *Rounds v. Jackson Park Hosp. & Med. Ctr.* for the argument that a self-insured hospital's intra-employee communications cannot be privileged merely because the communication is internal. 745 N.E.2d 561 (Ill. App. Ct. 2001). The case is distinguishable from the instant matter, however, because the report at issue in that case was created by the nurse, and there was no indication in the record that the report "originated in confidence, that it would not be disclosed, was made to an attorney for legal advice or services, or remained confidential for those purposes." *Rounds*, 745 N.E.2d at 567.

Here, the Confidential Risk Management Worksheets were created as a result of the Patient Relations Manager's indication of severity according to hospital policy triggering an investigation, again, "for the purpose of obtaining legal advice and/or assessing the likelihood of litigation." (Doc. 68-1). Additionally, there is no indication that those documents would be disclosed, and each document is marked "Privileged and Confidential Attorney Work Product," indicating an intent they remain confidential for the purposes of the investigation for which they were created. SIH is self-insured with a duty to defend its employees against claims, and the Confidential Risk Management Worksheets were created with the purpose of transmitting information to SIH General Counsel. Therefore, the Confidential Risk Management Worksheets are privileged.

Accordingly, Plaintiffs motion to compel production of the Confidential Risk

Management Worksheets is **DENIED**.

## II. PSO Encounter Entry Reports

SIH also has met its burden of showing that each PSO Encounter Entry Report was generated specifically for reporting information to a PSO. SIH alleged the documents were specifically generated for the purpose of reporting to their contracted PSO and that the information was, in fact, submitted to that PSO (Doc. 68 at 16; Doc. 68-1 at 4–5). The record shows SIH submitted an affidavit attesting that the documents were sent to the PSO along with providing the identity of the PSO, the title of the documents, and a description of them by SIH, which suggests they were created specifically for transmission to a PSO (Doc. 68 at 16; Doc. 68-1 at 4–5). Consequently, the PSO Encounter Entry Reports are protected as patient safety work product.

Plaintiffs contend that because some information from another source, the Confidential Risk Management Worksheets, was *also* sent to the PSO, there is overlapping information in the PSO Encounter Entry Reports that is not protected as patient safety work product because that information was not generated specifically for reporting to a PSO. In response, SIH clarifies that the PSO Encounter Entry Reports were generated as separate documents, noting however that some of the underlying information contained in the report came from RDE reports. In interpreting the "medical records" exception to patient safety work product, the Court in *Daley* found that "merely because information required to be in [a patient's] medical records might also be contained in the documents at issue does not mean the documents themselves are no longer patient safety work product." *Daley*, 107 N.E.3d at 1041. Similarly, the privilege is not waived for a document

generated specifically for reporting to a PSO merely because it references information generated elsewhere for other purposes. Furthermore, SIH has attested to providing the RDE reports referenced by the PSO Encounter Entry Reports in discovery, and Plaintiffs do not seek to compel discovery of those documents.

Accordingly, Plaintiffs' motion to compel production of the PSO Encounter Entry Reports is **DENIED**.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiffs' Motion to Compel (Doc. 64).

**IT IS SO ORDERED.**

**DATED: July 13, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**